STATE of Missouri, Respondent,

v.

Larry R. HOSTETTER, Jr., Appellant.

No. WD 62301.

Missouri Court of Appeals,
Western District.

Feb. 24, 2004.

---

Jeremiah W. (Jay) Nixon, Atty. Gen., Shaun J. Mackelprang, Assistant Attorney General, Jefferson City, MO, for respondent.

Amy M. Bartholow, Assistant Public Defender, Columbia, MO, for appellant.

Before: HOWARD, P.J., and LOWENSTEIN and SMART, JJ.

VICTOR C. HOWARD, Presiding Judge.

On appeal from the judgment entered upon his conviction of assault in the first degree, Larry R. Hostetter, Jr. (Appellant), claims the trial court erred in refusing to instruct the jury on the lesser-included offense of assault in the third degree. As explained below, there was no basis for acquittal on the greater offense of first-degree assault, so the trial court did not commit reversible error in refusing to instruct on third-degree assault.

### Background

On May 21, 2002, Appellant was taking care of his girlfriend Rachel Griggs' two-year-old son, Patrick, while Ms. Griggs was at work. At about 9:30 p.m., Appellant left his home with Patrick to pick up Rachel. As Appellant backed the truck down his driveway, Patrick was standing in the passenger seat, crying. Appellant repeatedly struck Patrick and knocked him out of the window of the truck onto the gravel driveway. Appellant immediately stopped the truck and went to the passenger side to pick up Patrick, whom he thought he had killed at first. Appellant picked Patrick up from the gravel driveway, spanked him, and threw him back into the truck, causing Patrick to hit the dashboard and bounce back onto the seat.

On the way to pick up Rachel, Appellant stopped at the home of his co-worker Robert Dyer and Mr. Dyer's girlfriend Sindy Burnett to ask Sindy's daughter to babysit. The couple noticed that Appellant, who carried a beer into their home, appeared intoxicated. The couple also noticed Patrick had several bruises and bumps on his head, a fat lip, a swollen eye, and dried blood on his nose and in his ear. When the couple asked Appellant about Patrick's injuries, Appellant gave them several different "versions or stories or explanations" about the child falling out of the truck. At one point, Appellant told them he "beat the shit out of him" as he was stopping Patrick from falling out of the truck. The couple suggested Appellant either leave Patrick with them while he went to pick up Rachel or take him to the hospital. Appellant told them he would take Patrick to the hospital. After Appellant left with Patrick, Mr. Dyer and Ms. Burnett found an empty twelve-pack of beer on their lawn. Concerned for Patrick's welfare, they immediately went to the Carrollton, Missouri, Police Department near their home to report what had happened.

The Carrollton Police Department contacted the Saline County Sheriff's Department to report the information. Deputy Sheriff Timothy Butner located Appellant's truck at Larry Hostetter, Sr.'s home. Initially, Rachel lied about the origins and extent of Patrick's injuries. However, when Deputy Butner demanded to see Patrick and Rachel brought him outside, Deputy Butner saw the bruises on Patrick's head and face, dried blood around his face, and a burn mark on his lip,[1] and he insisted they take Patrick to the hospital.

Once at the hospital in Marshall, Missouri, the emergency room doctor physically examined Patrick. The doctor noted that Patrick had multiple scrapes, cuts, red marks, dried blood, and swelling over most areas of his body, the majority of which injuries "were just a few hours or less old." Of the ten child physical abuse cases the doctor had previously examined, he described Patrick's case as "the worst [he] had seen because of the extensiveness of [the injuries] and the percent of the body that was involved." None of Patrick's injuries, however, required hospitalization at the time.

Deputy Butner placed Rachel under arrest. After obtaining Rachel's consent to enter the home she shared with Appellant in Mt. Leonard, Missouri, Deputy Butner woke Appellant up and took him to the sheriff's department around 3:00 a.m. Appellant gave a written statement and a videotaped statement to the police, in which he explained that he had slapped Patrick in an attempt to prevent him from falling out of the truck, but he ended up knocking Patrick out of the truck onto the gravel driveway. Appellant told the interviewing officer that he then stopped the truck, went to pick up Patrick, and threw him back into the truck through the window, where Patrick bounced off the dashboard and into the seat. Appellant, who the officer described as remorseful about what had happened, then returned to the house to get Patrick's car seat from the front porch.

The State charged Appellant with first-degree assault, in violation of section 565.050.[2] The case proceeded to a jury

---

1. The evidence showed that Rachel, who pled guilty to endangering the welfare of a child in a separate case, caused the burn mark on Patrick's lip.

2. Statutory references are to RSMo 2000.

trial. Consistent with his defense at trial, defense counsel requested an instruction on third-degree assault on the theory that Appellant acted recklessly but did not intend to cause Patrick serious injury when he knocked him out of the truck. The trial court refused the instruction and instructed the jury on first-degree assault only. After an hour of deliberations, the jury returned a verdict finding Appellant guilty as charged. The trial court, which had previously found Appellant to be a prior offender, sentenced Appellant to fifteen years, which sentence was to run consecutively to an existing five-year sentence he was already serving in another case.

This appeal follows.

## Lesser–Included Offense Instruction

■ In his sole point on appeal, Appellant claims that the trial court erred in rejecting the third-degree assault instruction because the evidence provided a basis for an acquittal of first-degree assault, in that he did not act with the purpose of causing Patrick serious physical injury, and provided a basis for a conviction of third-degree assault, in that he acted recklessly.

Appellant was charged with first-degree assault under section 565.050.1, which provides, "A person commits the crime of assault in the first degree if he attempts to kill or knowingly causes *or attempts to cause serious physical injury to another person*." (Emphasis added.) The trial court instructed the jury in relevant part that it could find Appellant guilty of first-degree assault if it believed from the evidence beyond a reasonable doubt:

> That on or about May 21, 2002, in the County of Saline, State of Missouri, [Appellant] attempted to cause serious physical injury to Patrick J. Griggs by

repeatedly striking Patrick J. Griggs with the [Appellant]'s hands, and by knocking Patrick J. Griggs out of a motor vehicle . . .

The court further instructed the jury:

> As used in this instruction, a person attempts to cause serious physical injury when, with the purpose of causing that result, he does any act that is a substantial step toward causing that result. A "substantial step" is conduct that is strongly corroborative of the firmness of the actor's purpose to cause that result.

Appellant argues he was entitled to an instruction on third-degree assault pursuant to section 565.070.1(4) because

> the jury could have found that, in hitting Patrick, [Appellant] did not have the purpose to cause serious physical injury to Patrick, but rather, that he recklessly created a grave risk of serious physical injury to him. Under the law, a person can intentionally inflict trauma without intending to cause serious physical injury, but [Appellant's] jury was not permitted to evaluate the evidence under this theory; instead, it was left with only two choices: convict [Appellant] of first degree assault or acquit him. Consistent with his remorse for the assault, [Appellant] was not asking to be set free, but only that the jury be allowed to consider his evidence that he did not intend to inflict serious physical injury on Patrick when he struck out at him in frustration.

On this issue, Appellant's proffered instruction,[3] which the trial court refused, read in relevant part:

> If you do not find [Appellant] guilty of assault in the first degree under Instruction No. ____, you must consider whether he is guilty of assault in the third degree.

---

**3.** Appellant's proposed instruction was patterned after MAI–CR3d 319.16.

If you find and believe from the evidence beyond a reasonable doubt:

That on or about May 21, 2002, in the County of Saline, State of Missouri, [Appellant] recklessly created a grave risk of serious physical injury to Pattrick [sic] J. Griggs by repeatedly striking him with [Appellant]'s hands and knocking him out of a motor vehicle,

then you will find [Appellant] guilty under this instruction of assault in the third degree.

\* \* \*

As used in this instruction, the term "recklessly" means to consciously disregard a substantial and unjustifiable risk that circumstances exist or that a result will follow, and such disregard constitutes a gross deviation from the standard of care that a reasonable person would exercise in the situation.

\* \* \*

 There is no dispute that third-degree assault is a lesser-included offense of first-degree assault. *State v. Garrison*, 975 S.W.2d 460, 461 (Mo.App. S.D.1998) (citing *State v. Spencer*, 725 S.W.2d 54, 56 (Mo.App. W.D.1987)). As explained in *State v. Avery*, 120 S.W.3d 196, 205 (Mo. banc 2003):

> Instruction on a lesser-included offense is required if the evidence produced at trial, by fact or inference, provides a basis both for the acquittal of the greater offense and the conviction of the lesser offense. Sec. 556.046.2. When in doubt, courts should instruct on the lesser-included offense, leaving it for the jury to decide of which offense, if any, the defendant is guilty.

(Footnote omitted.) However, "[a] defendant is not entitled to a lesser included offense instruction merely because the jury might disbelieve some of the state's evidence or decline to draw some or all of the permissible inferences." *State v. Mouse*, 989 S.W.2d 185, 192 (Mo.App. S.D. 1999). "For there to be a basis for an acquittal of the greater offense, there must be a questionable essential element of the greater offense." *State v. Derenzy*, 89 S.W.3d 472, 474 (Mo. banc 2002). In this case, the distinguishing factor between the instruction given the jury for assault in the first degree and Appellant's proffered instruction for assault in the third degree is Appellant's mental state or intent, which is the essential element Appellant alleges is questionable. If a reasonable juror could draw inferences from the evidence presented that this essential element was not established, then the trial court should have instructed down. *Id.*

Appellant cites the cases of *State v. Carlile*, 9 S.W.3d 745, 750–53 (Mo.App. S.D. 2000), *State v. Frappier*, 941 S.W.2d 859, 860–62 (Mo.App. S.D.1997), and *State v. Ponder*, 950 S.W.2d 900, 904–09 (Mo.App. S.D.1997), in support of his argument that the jury should have been instructed that it could find him guilty of third-degree assault if it found he acted recklessly in repeatedly striking Patrick and causing him to fall out of the truck rather than acting with the purpose of causing Patrick serious physical injury. Those cases, however, are inapposite to our analysis in this case; they address only the sufficiency of the evidence to support the defendants' convictions of involuntary manslaughter of their young victims, on which the jury was instructed. Unlike here, the issue in those cases was not whether the defendants were entitled to instructions on lesser-included offenses that the trial courts had refused. The standards for reviewing these different issues vary greatly.

Citing section 562.021.4, the State acknowledges in its brief, "there is little question that the evidence would have supported a conviction for the lesser offense if

836

it had been submitted to the jury." But, this is only the one part of the inquiry in determining whether the trial court should have instructed the jury on the lesser-included offense; there must also be a basis for the jury to acquit on the greater offense. Section 556.046.2; *Avery*, 120 S.W.3d at 205. The trial court concluded there was no basis to acquit of first-degree assault. As explained below, we agree.

██ "Intent, as an element of assault, is generally not susceptible of direct evidentiary proof and may be established by circumstantial evidence or inferred from surrounding facts." *State v. White*, 847 S.W.2d 929, 933 (Mo.App. E.D.1993). The relevant circumstances to be considered include Appellant's conduct before the act, the act itself, and Appellant's subsequent conduct. *Id.* In reviewing whether Appellant was entitled to the third-degree assault instruction, we must view the evidence in a light most favorable to Appellant. *State v. Bruce*, 53 S.W.3d 195, 201 (Mo.App. W.D.2001). Those facts, as stated by Appellant in his brief, follow:

> [Appellant] said that on the day in question, he was baby-sitting Patrick from 2:00 p.m. until 10:00 p.m. while Rachel Griggs was at work. As he was driving down the driveway on the way to pick up Ms. Griggs, Patrick was standing in the seat next to him, crying. He reached over and hit Patrick hard, knocking him out of the window. When that happened, [Appellant] slammed on the brakes, jumped out, went around the truck, grabbed Patrick, spanked him, and threw him back into the truck where he hit the dashboard and bounced off into the seat. [Appellant] felt bad about what happened, so he drove back up to the house to retrieve Patrick's car seat off of the front porch. According to Detective Capps, [who took Appellant's statement], and as reflected in [Appellant's videotaped statement, Appellant] was remorseful about what had happened.

> * * *

During closing argument, defense counsel told the jury that "there is no question that [Appellant] hurt that child that night." However, he argued that [Appellant] did not have the purpose to cause serious physical injury to him. "[W]hat happened to [Appellant] on the night in question was a combination of factors; lack of proper eating, drinking beer to the point of intoxication, anger that he has to take care of a child that shouldn't be his responsibility, and he reacted to the child crying." Counsel argued that [Appellant's] behavior was an unreasonable reaction to a stimulus. He said it was reckless, but he did not act with the purpose of causing serious physical injury. His action in going back to get the car seat reflected his consciousness to not cause serious physical injury. His videotaped confession reflected his remorse, and he admitted that his anger, intoxication, frustration and stupidity caused this incident. "I am not in any way, shape, or form asking you to walk out of this courtroom having delivered a verdict and saying, 'Here, we'll let this guy off.'"

Even when we consider these facts in a light favorable to Appellant, we perceive no basis in the record for a reasonable juror to find or infer that Appellant did not have the purpose of causing Patrick serious physical injury when he repeatedly struck Patrick with his hands and knocked the child out of the truck as Appellant backed it down the driveway. "Where proof of defendant's guilt is strong, where the evidence clearly indicates the commission of the more serious crime, and where there is no evidence to support an adverse finding on an element of the charged

crime, it is not necessary to instruct on a lesser included offense." *State v. Toran,* 878 S.W.2d 913, 914 (Mo.App. E.D.1994). Here, there was no evidence to support an adverse finding on, or to make questionable the element of, Appellant's intent as set forth in the trial court's instruction for first-degree assault.

Point denied.

### Conclusion

Because the trial court properly refused to instruct the jury on the lesser-included offense of assault in the third degree, we affirm the judgment entered upon Appellant's conviction of first-degree assault.

LOWENSTEIN and SMART, JJ., concur.